**SO ORDERED: February 22, 2019.**



_____
**Robyn L. Moberly
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RICHARD EUGENE DECKARD, JR. ) | CASE NO. 17-6053-RLM-7A |
| MARILYN SUE DECKARD ) | |
| ) | |
| Debtors ) | |
| _____ ) | |
| ) | |
| PNC MULTIFAMILY CAPITAL ) | |
| INSTITUTIONAL FUND XXVI ) | |
| LIMITED PARTNERSHIP, ) | |
| COLUMBIA HOUSING SLP ) | |
| CORPORATION, and SHELBY'S ) | Adversary Proceeding |
| LANDING – II, L.P, ) | No. 17-50470 |
| ) | |
| Plaintiffs ) | |
| ) | |
| Vs. ) | |
| ) | |
| RICHARD EUGENE DECKARD, JR. ) | |
| and MARILYN SUE DECKARD ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

1

### ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came before the court for hearing on the Plaintiffs' Motion for Partial Summary Judgment on December 13, 2018 and Defendants' cross motion for Summary Judgment. After excellent oral argument by the parties' attorneys, the court took the matter under advisement.

### UNCONTESTED FACTS

Shelby's Landing - II, L.P. ("Shelby's L.P.", "Limited Partnership" or "Partnership") was a limited partnership that was formed in April 2005 between Columbia Housing SLP Corporation ("Columbia"), PNC Multifamily Capital Institutional Fund XXVI Partnership ("PNC") (collectively, the "Plaintiffs"), and Shelby's Landing - II Inc. ("Shelby's Inc." or "General Partner"). The purpose of the newly formed Shelby's L.P. was to acquire and construct affordable housing and manage or operate same. The defendant, Richard Decker Jr. ("Richard"), controlled and was President of Shelby's Inc. and Shelby's Inc. was the general partner of Shelby's L.P. Richard also owned and controlled Deckard Realty Development Company ("Deckard Realty") which was the project manager for Shelby's L.P. Marilyn Decker ("Marilyn") is Richard's wife and was a guarantor of the obligations owed to Shelby's L.P., mentioned below.

As the General Partner in Shelby's L.P., Shelby's Inc. had the responsibility to manage the business of Shelby's L.P., advance funds necessary to meet operating expenses, maintain the records, lease units, properly maintain tenants' security deposits, among other duties. The General Partner was prohibited expressly from receiving any compensation except for a non-cumulative partnership management fee, a development fee, and an incentive management fee. Without express consent from the limited partners, Shelby's Inc. was also prohibited from transferring any asset of the Partnership, borrowing from the Partnership, causing the Partnership to borrow funds, making any loans from the Partnership, or co-mingling any Partnership funds with the funds of any other entity or person. Marilyn, Richard, and

Deckard Realty all signed a guaranty in favor of Shelby's LP, PNC and Columbia. The guaranty provided that the Debtors and Deckard Realty unconditionally guaranteed the full and prompt payment, performance, compliance and satisfaction of all obligations, covenants, representations and warranties on the part of Shelby's Inc. and with respect to the 2005 partnership agreement.

Unfortunately, Shelby's L.P. began experiencing problems during the construction phase of the project that continued into the leasing operation post-construction. In August 2011, the Plaintiffs in this action filed a complaint in state court against the Debtors alleging breach of contract and breach of fiduciary duties under the 2005 Partnership Agreement. A trial was held on January 26, 2015 and the state court entered judgment against the Debtors finding them jointly and severally liable to the Plaintiffs in the amount of $1,596,290.46 for funds improperly paid to and misappropriated by the Debtors and their affiliates (the "State Court Judgment"). Richard and Marilyn (the "Debtors") filed their chapter 7 case on August 11, 2017.

The state court issued detailed findings of fact and conclusions of law. The Plaintiffs base their Motion for Partial Summary Judgment (doc #20) on their contention that the findings of fact and conclusions of law issued by the state court are dispositive of issues presented in this case and that the Debtors are precluded from re-litigating the nondischargeability of the State Court Judgment under §523(a)(2)(A) and that Richard is precluded from relitigating nondischargeability under §523(a)(4) and (6). The Debtors likewise have filed a Motion for Partial Judgment Independent of Motion Pursuant to FRCP 56(f) (doc #33). Debtors contend that the findings of the state court establish that Marilyn's debt to the Plaintiffs is fully dischargeable under §523(a)(2)(A) and that the Plaintiffs are precluded from presenting any evidence to the contrary. Debtors do concede that the findings are not so clear as to Richard and that this matter should proceed to trial as to the dischargeability of Richard's debt to the Plaintiffs.

3

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of proving the absence of a genuine issue of material fact and the non-moving party must affirmatively demonstrate the existence of a genuine issue of material fact requiring trial. Fed.R.Civ.P. (56(a); *Celotax Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *In Re Clark,* 550 B.R. 429, 431 (Bankr. N.D. Ind. 2016). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non- moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). The court is not permitted to weigh conflicting evidence or to make credibility determinations and must consider only evidence that is presented in a form that would be admissible at trial. *Omnicare, Inc. v. UnitedHealth Grp.,* 629 F.3d 697, 704 (7th Cir. 2011), Fed.R.Civ.P 56(c)(2).

## ISSUE PRECLUSION

Both the Plaintiffs' Motion for Partial Summary Judgment and the Defendants' Cross-Motion for Summary Judgment (contained in the Debtors' Brief in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Partial Judgment Independent of Motion Pursuant to FRCP 56(f)) rise or fall on the effect of the state court's findings of fact and conclusions of law in this case.

Issue preclusion, also known as collateral estoppel, prevents a party from relitigating issues that were resolved in a prior legal action. *Adams v. City of Indianapolis,* 742 F.3d 720, 736 (7th Cir. 2014). Once an issue is actually and necessarily litigated by a court of competent jurisdiction, the determination is conclusive in subsequent suits between the same parties to the prior litigation. *Sec. & Exch. Comm'n v. Durham,* No. 111-CV-00370JMS-TAB, 2017 WL 3581640 (S.D Ind. August 18, 2017). The Full Faith and Credit Clause of the United States

4

Constitution provides that federal courts must accord to state court judgments the same weight as would be accorded by the courts of the state in which the judgment was rendered. Art. IV Section 1, U.S. Constitution. *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004); (the effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment); *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002)("[t]he preclusive effect of a state court judgment in a federal case is a matter of state rather than federal law.") The State Court Judgment was issued by an Indiana state court and this court must give it the same preclusive effect as would be given that judgment under Indiana law. In Indiana, a party may be collaterally estopped from litigating an issue if (1) the party against whom estoppel is invoked was fully represented in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment, and (4) the issue sought to be precluded was the same as that in the prior litigation. *In re Luedtke*, 429 B.R. 241, 250 (Bankr. N. D. Ind. 2010); *In re White*, 444 B.R. 887, 892 (Bankr. S.D .Ind. 2010) (where both courts considered the preclusive effect of an Indiana state court judgment). *Luedtke* noted that the elements to be considered under Indiana law are the same under federal law. *Luedtke*, 429 B.R. at 250. The party seeking to invoke issue preclusion must show the actual findings in the prior proceeding that the party claims entitles the preclusion and it must "map those findings onto the standard" for the nondischargeability claim under §523. C*alvert v. National Labor Relations Board,* 913 F.3d 697, 701 (7th Cir. 2019). (in §523(a)(6) nondischargeability action, court had to "map" the prior court's findings onto the standard for "malice" in considering preclusive effect of NLRB administrative ruling).

     Debtors contend that the findings of fact in the state court established that Richard manipulated the finances of Shelby's Inc. and Deckard Realty and Development Company in contravention of the requirements of the numerous documents establishing the relationship between the parties. However, Debtors believe that the fourth element – the issue sought to be precluded was the same as that in the state court litigation or "identity of issues"-- is not met here. They contend that the State Court Judgment merely established repeated breaches of

5

contract and that Richard's manipulation of the finances were all undertaken to keep the project afloat. They argue that Richard did not hide any of his actions from his creditors and his maneuverings were meticulously documented and reported to the creditors. The Debtors contend that the State Court Judgment does not have the particularized findings necessary to find nondischargeability under any of the §523 counts. Marilyn argues that the State Court Judgment determined that she did not control or direct the Deckard entities and did not exercise decision-making relative to the project. She was not an officer or director or shareholder of Deckard Realty or Shelby's Inc. She states the extent of her involvement was her signature on the guarantee agreement in her individual capacity.

### SECTION 523 (a)(2)(A) and (a)(4)

> Section 523(a) provides, in relevant part:
> "A discharge under section 727... of this title does not discharge an individual debtor from any debt-
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud….
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny…

The Seventh Circuit has noted material differences among the three possible grounds for nondischargeability under section 523(a)(2)(A) and has formulated two different tests, one for both "false pretenses" and "false representation" and another for "actual fraud". *See Rae v. Scarpello (In re Scarpello),* 272 B.R. 691, 699-700 (Bankr.N.D. Ill. 2002) (citing *McClellan v. Cantrell,* 217 F3d 890, 894 (7th Cir. 2000)). To prevail on a nondischargeability claim under the "false pretenses" or "false representation" theories, a creditor must prove all of the following elements: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg,* 599 F.3d 712, 716-717 (7th Cir. 2010).

"What constitutes false pretenses in the context of section 523(a)(2) has been

6

defined as "implied misrepresentations or contact intended to create and foster a false impression."' *Mem'l Hosp. v. Sarama (In Re Sarama),* 192 B.R. 922, 927 (Bankr. N.D. Ill 1996) (quoting *Banner Oil Co., v. Bryson (In Re Bryson),* 187 B.R. 939, 959 (Bankr. N.D. Ill 1995) (internal quotes omitted)). "False pretenses do not necessarily require overt representations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations when the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* (citation omitted).

The recent case of *Husky International Electronics, Inc, v Ritz,* 136 S.Ct. 1581 (2016) is instructive as to what constitutes "actual fraud" under the other prong of §523(a)(2)(A) and is similar to the present case. In *Husky,* the debtor company incurred a debt with the creditor, Husky. The principal who was in financial control of the debtor (although not a sole officer, director and shareholder) drained the debtor company of funds, directed the funds to himself (directly or indirectly), and, thereafter, the debtor company filed bankruptcy. The Supreme Court of the United States held that the actual fraud exception to discharge for debts obtained by false pretenses, a false representation, or actual fraud can be accomplished without a false representation. *Id.,* at 1586. Fraudulent conveyances usually involve a secret transfer, or a transfer to a close relative. In these cases, the fraud is in the acts of concealment and hindrance. Therefore, the chance a false representation occurring is much less likely, unless it is in the coverup. Further, the Court found that the word "actual" has a simple meaning and denotes any fraud that involves moral turpitude or intentional wrong. *Husky* further states that a fiduciary who perpetrates a fraudulent conveyance may find his debt to the victim of the fraud nondischargeable as a debt for actual fraud or the discharge exception for fiduciary fraud. And, if the recipient of the fraudulent transfer also commits that fraud with the requisite intent, and later files for bankruptcy, any debts "traceable to" the fraudulent conveyance will be nondischargeable under 11 USC §523(a)(2)(A).

To establish that a debt is nondischargeable under §523(a)(4) for reason of

7

defalcation while acting in a fiduciary capacity, the creditor must establish, by a preponderance of the evidence, the existence of an express trust or of a fiduciary relationship which allows or causes the defalcation to occur. *In re Schlenk*, Adv. No. 02A01021, 2003 WL 21018591 (Bankr. N.D. Ill. April 17, 2003). The existence of a fiduciary relationship is a matter of federal law. Not all fiduciary relationships qualify under the bankruptcy code. A fiduciary relationship only qualifies under section 523(a)(4) if it "imposes real duties in advance of the breach". *Matter of Marchiando,* 13 F.3d 1111, 1116 (7th Cir. 1994); *In re Frain,* 230 F.3d 1014, 1017 (7th Cir. 2000). A managing partner is a fiduciary of the limited partners, similar to shareholders of a corporation, although no trust exists in the conventional sense. *Marchiando*, 13 F.3d at 1115; *In re Bennett*, 989 F.2d 779, 790 (5th Cir. 1993); *In re Short*, 818 F.2d 693, 695-96 (9th Cir. 1987). A trust or other fiduciary relationship that exists independent of the debtor's wrongful act is required to establish the kind of fiduciary necessary to deny the discharge. Common examples are a lawyer's fiduciary duty to his client, or a director's duty to his Corporation's shareholders, because those relationships existed prior to the wrongful act. The fiduciary relationship cannot be a constructive trust applied after the wrongful act occurred.

The Seventh Circuit has defined fiduciary relationship under section 523 (a)(4) as "a difference in knowledge or power between the fiduciary and the principle which gives the former a position of ascendancy over the latter." *Marchiando,* 13 F.3d at 1116; see also, Restatement (Second) of Trusts §2, comment b (1959). The relationship is such that the fiduciary has significant freedom to run the business as he sees fit, including oversight of distributions of cash flow. *Frain,* at 1018.

The debtor must commit "defalcation" while acting in a fiduciary capacity for the debt to be nondischargeable under §523(a)(4). "Defalcation" includes "a culpable state of mind requirement involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior". *Bullock v. BankChampaign, N.A.,* 569 U.S. 267, 273-74 (2013). "Defalcation" for §523(a)(4) purposes is broad enough to include nonfraudulent breaches of fiduciary duty. *Id.* at 275.

## SECTION 523(a)(6)

11 USC §523(a)(6) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

For a finding of nondischargeability of a debt under §523(a)(6), the Plaintiff must prove three elements by a preponderance of the evidence: (1) that the debtors caused an injury to the plaintiff's person or property interest; (2), the debtor's actions were willful, and (3) the debtor's actions were malicious. *In Re Krause,* 510 B.R. 172 (Bankr. N.D. Ill. 2014).

The Seventh Circuit has held that "a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v Larsen,* 677 F.3d 320, 324 (7th Cir. 2012); *Krause,* 510 B.R. at 182. An injury is a "violation of another's legal right for which the law provides a remedy". *First Weber Group, Inc. v. Horsfall,* 738 F.3d, 767, 774 (7th Cir. 2013). Willful in section 523(a)(6) modifies the word injury, indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v Geiger,* 523 U.S. 57, 61 (1998). If it is not the intended result, but another result of the intended act, the debt is dischargeable. *Jendusa-Nicolai,* 677 F.3d at 322. Nondischargeability, therefore, requires an intentional injury, not just an intentional act. An intentional tort may not involve the intent to cause the actual injury.

### STATE COURT FINDINGS OF FACT AND CONCLUSIONS OF LAW

On April 27, 2015, the Shelby Superior Court entered Findings of Fact and Conclusions of Law and a final judgment after a trial which had commenced on January 26, 2015. The state court litigation involved the same parties as this adversary proceeding involves and it diagrammed the relationships and events

9

which gives rise to this nondischargeability litigation. The parties were all fully represented in the state court action. The State Court recited the uncontested facts which are repeated hereinabove regarding the organizational structure of Shelby's L.P. and the relationship of the parties.

In addition, the state court made the following findings of fact which are relevant to this proceeding to determine the dischargeability of the State Court Judgment [1]:

<u>As to the Debtors' respective relationships to and control over various entities:</u>

Richard was the president and sole officer, director and shareholder of Shelby's Inc. Richard was the sole owner and he controlled Deckard Realty. Marilyn's affidavit states that she was a clerical employee only.[2]

<u>As to duties of the General Partner, Shelby's, Inc. to Shelby's LP under the Limited Partnership agreement:</u>

Being the General Partner of Shelby's LP, Shelby's Inc. had the responsibility for the management of the Partnership's business, advancing all funds necessary to meet operating deficits, leasing the Partnership's apartment rental units maintaining tenant security deposits in separate accounts used for the sole purpose of tenant deposits as security for tenant rent, advancing all funds necessary to meet operating deficits, paying any costs or expenses incurred by the Partnership to fund project costs, rehabilitation, development, operations or other costs to complete the project, making an immediate capital contribution to fund any Credit Adjuster Amount, which in turn was to be distributed to the Investment Limited Partner, PNC. The partnership agreement also provided that General Partner was prohibited from receiving any salary, compensation or other fees from the Partnership, except for a non-cumulative partnership management fee, a development fee, and an incentive management fee. Further, the General Partner

---

[1] The Findings and Conclusions of the state court are stated nearly verbatim herein but taken out of the order in which they were stated by the trial court. Quotation marks are not utilized to enhance the readability of this section.

[2] The state court's findings do not specifically find that Marilyn was only a clerical employee and does not speak to the extent of her control.

10

was prohibited from transferring any asset of the Partnership, borrowing from the Partnership or co-mingling Partnership funds with the funds of any other person, or causing the Partnership to make any loan or advance to any person except for accounts receivable made in the ordinary course provided those receivables are not from the General Partner or its Affiliates.

<u>As to the Debtors' and Deckard Realty's guaranties of General Partner Shelby's, Inc's obligations</u>

Defendants Deckard Realty, Richard Deckard, Jr. And Marilyn Deckard executed an Agreement of Guarantee. Pursuant to the Agreement of Guarantee, the Debtors "unconditionally guaranteed to the Partnership and the Limited Partners the Full and Prompt Payment, Performance, Observance, Compliance and Satisfaction of All Obligations, Covenants, Representations and Warranties on the Part of the General Partner to be paid, performed, observed, complied with are satisfied with respect to the partnership agreement." The Agreement of Guarantee was a continuing guarantee and was not to be impaired by any amendment to the 2005 Partnership Agreement. The Agreement was later amended on December 20, 2007, with the guarantors each acknowledging in writing their agreement to extend the Agreement of Guarantee to include any additional obligations under the 2007 amended partnership agreement.

<u>As to Shelby's LP's financial difficulties leading up to the misappropriation of funds</u>

The apartments were placed in service near the end of 2005 and the Partnership soon faced significant financial difficulties. As a result of the lower revenues and higher expenses during its first month of operation, Shelby's L.P. could not meet the debt service coverage ratio necessary to convert its construction loan to a permanent loan sufficient in size to repay the construction loan. Shelby's Inc. and Deckard Realty were jointly liable to pay into the Partnership any amounts necessary for the Partnership to fund the difference between the construction loan balance and a permanent loan. The construction loan was extended many times beyond its maturity date to avoid a loan default. Shelby's Inc., as a General Partner through August 11, 2011, was responsible for the day-to-day management of

Shelby's L.P., and was responsible to the Partnership for the misuse of Partnership funds. As guarantors, Richard, Marilyn, and Deckard Realty are jointly and severally responsible for the General Partner's obligations to the Partnership for any misuse of partnership funds.

<u>As to the misappropriation of Shelby's LP funds by Debtors, Deckard Realty and Shelby's Inc:</u>

Two Partnership bank accounts at First Bank of Richmond were used by the Debtors to withdraw funds from the Partnership from 2006 through August 2011: a Partnership security deposit account and a Partnership operating account. Richard signed most of the checks that withdrew funds from the two accounts and Marilyn signed other checks that withdrew funds from these two accounts.[3] The sum of $1,596,290.46 was paid with checks written to or for the benefit of Affiliates of the General Partner. None of the checks withdrawing funds from the security deposit account and the Partnership operating account were written directly to the General Partner and, therefore, none of the funds could have properly constituted a management fee payment to the General Partner which was the only fee allowed to be paid to the General Partner pursuant to the Partnership Agreement.

The 2005 partnership agreement provides in section 6.3 that without the express written consent of PNC, the General Partner was prohibited from transferring any asset of the Partnership, borrowing or co-mingling funds of the Partnership and causing the Partnership to make any loan or advance to the General Partner or its Affiliates. Richard admitted that he co-mingled Partnership funds with the funds of Deckard Realty and that he never received written consent to any co-mingling. Richard also admitted that he transferred Partnership assets and made loans or advances of Partnership funds to Affiliates, and that he never received written consent.

<u>As to PNC's notice of default and Richard's subsequent misappropriation of funds</u>

Upon learning of a Partnership advance to a Deckard Affiliate in August

---

[3] The state court made no finding as to the number of checks Marilyn wrote nor did the court indicate the extent of her involvement in the misappropriation of partnership assets.

12

2010, PNC 's representative specifically advised Richard that the General Partner was prohibited from advancing Partnership funds to Affiliates. On November 10, 2010, PNC sent a written notice of default further informing the debtors of the prohibition against any advances of Partnership funds to Affiliates. PNC demanded the return by Debtors of approximately $153,000 of improperly advanced funds. On November 29 and 30, of 2010, the Debtors deposited approximately $153,000 into the Partnership and notified PNC of the return of those funds. However, without the knowledge or consent of PNC, within the next 10 days the Debtors withdrew $153,085.47 by writing checks to transfer those funds to or for the benefit of the Debtors' Affiliates. PNC did not learn that the Debtors promptly and improperly withdrew the very funds they were required to return to the Partnership until PNC obtained copies of the Partnership's bank statements during the state court lawsuit. From the date of PNC's August 2010 notice to Richard of the impropriety of transferring Partnership funds to Affiliates through the date of the General Partner's removal in August 2011, the Debtors transferred over $560,000 of Partnership funds to themselves or for their own benefit.

<u>As to transfers of funds to or for the benefit of affiliates:</u>

Richard and Deckard Realty took out loans with People's State Bank and the Debtors regularly used Partnership funds to pay amounts due to People's State Bank on the Debtors' loans with the bank. The payments to the bank were solely for the benefit of the Debtors and were an improper transfer of Partnership funds. The payments were an improper advance for the benefit of an affiliate, and an improper co-mingling of Partnership funds. The total amount of improper payments by Debtors from Partnership funds to People's State Bank is $407,163.25.

Village at Curry is an Affiliate of Shelby's Inc. as that term is defined in Article II of the 2005 Partnership Agreement. Debtors made payments to Village at Curry for the sole benefit of Debtors and those payments were an improper transfer of Partnership funds, and an improper advance for the benefit of an Affiliate, and improper co-mingling of Partnership funds. The total amount of improper payments by Debtors to Village at Curry from 2006 through 2011 is $22,700.00.

13

Kingston Ridge is an Affiliate of Shelby's Inc., as that term is defined in Article II of the 2005 partnership agreement. Debtors made payments to Kingston Ridge which were solely for the benefit of Debtors and were an improper transfer of partnership funds, an improper advance for the benefit of an affiliate, and improper co-mingling of Partnership funds. The total amount of improper payments by Debtors to Kingston Ridge from 2006 through 2011 is $9,900.00.

Foster's Landing is an affiliate of Shelby's Inc., as that term is defined in Article II of the 2005 Partnership Agreement. Debtors made payments to Foster's Landing that were solely for the benefit of the Debtors and were an improper transfer of Partnership funds, and an improper advance for the benefit of an Affiliate, and an improper co-mingling of Partnership funds. The total amount of improper payments by Debtors to Forster's Landing from 2006 through 2011 is $4,100.00.

Payments made to Shelby's L.P. consisted of improper withdrawals of $11,550.00 from the Partnership security deposit account and improper withdrawals of $12,000.00 of cash from the Partnership operating account. Payments to Shelby's L.P. were solely for the benefit of the Debtors and were an improper transfer of Partnership funds, an improper advance for the benefit of an affiliate, and an improper co-mingling of partnership funds. The total amount of improper payments by Debtors to Shelby's L.P. from 2006 through 2011 is $23,550.00.

Debtors made payments to others that, on the face the checks evidencing those payments, appear to be made for the benefit of the Debtors and not for the benefit of the Partnership total $10,844.07.

A payment to Dupont State Bank, which was not a lender to the Partnership, was made on November 26, 2008 in the amount of $10,150.35. These payments to others were solely for the benefit of the Debtors and were an improper transfer of Partnership funds, and an improper advance for the benefit of an Affiliate, and an improper co-mingling of Partnership funds.

As of July 31, 2011, which was the last full month before the General

14

Partner's removal, the balance in the Partnership's security deposit account was only $3,109.03. From February 1, 2006 through August 31, 2011, the Debtors withdrew funds for themselves and for their affiliates in the total amount of $74,645.07. The Debtors were never given consent to withdraw the security deposit funds for themselves or for their affiliates. In addition to the sums erroneously withdrawn from the security deposit account, the Debtors misappropriated $1,521,645.39 from the Partnership's operating bank account. Therefore, the total of misappropriated Partnership funds from both accounts totaled $1,596,290.46. Payments to Deckard Realty were solely for the benefit of the Debtors and were an improper transfer of Partnership funds, an improper advance for the benefit of an Affiliate, and an improper co-mingling of Partnership funds.  The total amount of improper payments by Debtors to Deckard Realty from 2006 through 2011 is $1,022,280.00. Richard and Deckard Realty are Affiliates of Shelby's Inc. as that term is defined in Article II of the 2005 Partnership Agreement. The total amount of improper payments by Debtor Richard, to himself, from 2006 through 2011 is $26,708.00.  Payments to Marilyn were solely for the benefit of the Debtors and were an improper transfer of Partnership funds, and an improper advance for the benefit of an Affiliate, and an improper co-mingling of Partnership funds. The total amount of improper payments by the Debtors to Marilyn is $69,035.14.

According to the findings of the state court, the Debtors failed to provide any evidence that any improper payments cited above was for a reimbursable Partnership expense. The state court found that at no time did Debtors ever obtain consent from PNC to pay any Affiliate. None of the $1,596,290.46 paid to the Deckard Affiliates was proper.

<u>As to fiduciary duties owed by Shelby's, Inc. to Shelby's, L P</u>

In addition, the state court further found and concluded that Shelby's Inc., as a general partner, owed fiduciary duties to Shelby's LP and the partners of Shelby's L.P.   Shelby's Inc. breached its contractual and fiduciary obligations under the 2005 Partnership Agreement not to transfer assets of Shelby's L.P., not to co-mingle Shelby's L.P. funds, and not to loan or advance Shelby's L.P. funds to affiliates.

15

As to Richard's intent

The Debtors are jointly and severally obligated under the guarantee to each of the Plaintiffs for Shelby's Inc.'s breaches of the 2005 Partnership Agreement. The Debtors are jointly and severally obligated under the guarantee to each of the Plaintiff's for the misappropriation of Shelby's L.P. funds, as stated hereinabove. Richard knowingly and intentionally exerted unauthorized control over Shelby's L.P.'s funds, with the intent to deprive Shelby's L.P. of its funds.

The state court further stated, "considering the totality of the evidence, the Court finds Defendant Richard Deckard, Jr., and the General Partner, Shelby's Inc., committed acts of misappropriation." After considering the totality of the evidence, the state court made the specific finding that Richard's acts of misappropriation were intentional and willful but the state court did not make a finding on this point as to Marilyn's culpability.

CONCLUSIONS BASED UPON STATE COURT FINDINGS

Both lawsuits involve the same parties and the same issues. The parties were represented and fully litigated the state court case through a bench trial to judgment. The state court's findings are binding upon this court and have a preclusive effect upon efforts to litigate these same issues. The state court findings established that Richard was the sole officer, director and shareholder of Shelby's Inc. He admits having full control of Deckard Realty. And, since Richard was acting at all relevant times as the president of the General Partner Shelby's, Inc., of the Limited Partnership, he was a fiduciary to the Plaintiffs. Based upon the state court's findings, the designated evidence, and the law with respect to fiduciary status, Richard was a fiduciary of Shelby's L.P. under §523(a)(4). The state court findings established that Richard intentionally and willfully misappropriated or converted $1,596,290.46 of Shelby's L.P. Funds while he served in the fiduciary capacity to the Plaintiffs. The continued misappropriation of significant Partnership funds by Richard, even after his misdeeds were discovered by PNC,

conclusively establishes his nefarious intentions and easily constitutes "defalcation" under §523(a)(4). He is precluded from relitigating the Plaintiffs' §523(a)(4) claim against him.

As to the plaintiffs'§523(a)(2)(A) claim against Richard, his brazen misappropriation of well over $1 million, after having been already caught in the act, establishes his intent to deceive, his awareness of the injury he was causing, and constituted not only a misrepresentation by his intentional omissions, but actual fraud under §523(a)(2)(a). While Debtors designated Responses to Requests for Admissions that concede the state court did not use the exact phrase "actual fraud", the law does not require the use of the exact words in the state court judgment. The findings and Richard's brazen conversion of Partnership funds is more than sufficient to conclude Richard committed an actual fraud under §523(a)(2)(A).

The state court found that Richard knowingly and intentionally exerted unauthorized control over Shelby's LP funds with the intent to deprive it of its funds. Richard argues that this finding is insufficient to preclude him from relitigating the Plaintiffs' §523(a)(6) claim, citing *Garoutte v. Damax*, 400 B.R. 208 (S.D.Ind. 2009). In *Damax,* the state court had found that the debtor committed criminal conversion under Ind. Code §35-43-4-3 which provided that "a person who knowingly and intentionally exerts unauthorized control over property of another person commits criminal conversion.". The bankruptcy court determined that the debtor was precluded from relitigating the plaintiff's §523(a)(6) claim against him because the elements of criminal conversion were sufficient to constitute "willful and malicious injury" by the debtor to the plaintiff. The District Court reversed, finding that the criminal conversion statute in and of itself was not sufficient to conclusively determine §523(a)(6) liability because it did not establish that the debtor had deliberately or intentionally converted the plaintiff's property. Here, the state court findings close that gap. They not only tracked the language of the criminal conversion statute but added that Richard had the intent to deprive the Limited Partnership of its funds. The state court finding here provides what the

17

state court findings in *Damax* failed to provide. The state court conclusively established by its findings that Richard intentionally converted the assets of the Limited Partnership to his own benefit both directly and indirectly through his Affiliates. The theft of the funds belonging to the Partnership undeniably and inevitably caused injury to the Plaintiffs. Richard is precluded from relitigating the §523(a)(6) claim. His debt to the Plaintiffs is excepted from discharge under §523(a)(6).

Richard argues that his affidavit speaks to the innocent reasons for his misappropriation of the funds from the plaintiffs. His explanation is that he was endeavoring to keep the project afloat. However, the findings and conclusions of the state court dismiss this less culpable explanation. The findings repeatedly and specifically state that the payments to Richard and the General Partner's affiliates were for the sole benefit of the Debtors, and "not for the benefit of the Partnership". The benefit was solely for the Debtors, not for the Partnership.

However, the Plaintiffs' §523(a)(2)(A) claim against Marilyn based upon issue preclusion resulting from the State Court Judgment has a different result. The state court findings provide that Marilyn was the recipient of misappropriated funds, but they merely establish her liability for the underlying debt based upon her guarantee, and not upon her actions. Marilyn establishes that she did not hold a position of authority with either the General Partner nor Deckard Realty. Her affidavit goes further and establishes she was only a clerical person in the enterprise. The extent of her participation in the misrepresentations and the fraud are not addressed by the state court, nor denied or explained in her affidavit. Therefore, the Court declines to enter partial summary judgment in either Plaintiffs' or Marilyn's favor on the §523 (a)(2)(A) claim of nondischargeability.

Accordingly, the Plaintiffs' motion for partial summary judgment as against Richard on the §523(a)(2)(A), (4) and (6) claims is GRANTED; and is DENIED as to Marilyn on the §523(a)(2)(A) claim. The Debtors' motion for partial summary judgment as to Marilyn on the §523(a)(2)(A) claim is DENIED.

# # #